**SO ORDERED.**

**SIGNED this 23 day of April, 2008.**



*Dale L. Somers*
Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| JAMES D. WILLS, | CASE NO. 05-17977-7 |
| MELINDA K. WILLS, | CHAPTER 7 |
|           DEBTORS. | |
| EDWARD J. NAZAR, Trustee, | |
|           PLAINTIFF, | |
| v. | ADV. NO. 06-5337 |
| THE JAMES D. WILLS AND MELINDA K. WILLS IRREVOCABLE FAMILY TRUST, JAMES D. WILLS, MELINDA K. WILLS, CLINGAN TIRES, INC., ROBERT W. CLINGAN, JR., CLINGAN LEASING, | |
|           DEFENDANTS. | |

## ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

This proceeding is before the Court on a motion for partial summary judgment. The motion was filed by David G. Arst, attorney for defendants James D. Wills and Melinda K. Wills, and J. Douglas Miller, attorney for defendant Clingan Tires, Inc., although the motion was purportedly filed on behalf of all the defendants. The plaintiff-trustee's response was filed by counsel Elizabeth A. Carson. Mr. Arst and Mr. Miller then filed a reply stating the defendants were filing it "by and through their attorney of record." J. Gregory Swanson has appeared in this proceeding as counsel for defendant the James D. Wills and Melinda K. Wills Irrevocable Family Trust, but he did not sign either of the pleadings submitted by Mr. Arst and Mr. Miller. The Court has reviewed the relevant materials and is now ready to rule.

**FACTS**

As relevant to this motion, the trustee seeks to exercise his power under § 544(b)(1) of the Bankruptcy Code to avoid transfers that at least one of the Debtors' unsecured creditors allegedly could have tried to avoid under K.S.A. 33-204 and -205 of the Kansas Uniform Fraudulent Transfer Act. He attacks transfers one or both of the Debtors allegedly made in January 2001, December 2001, and October 2005. He is also trying to follow some of the property involved in those transfers into the hands of third parties to whom the property was transferred in 2003.

The motion for summary judgment asserted some of the trustee's claims were

2

barred by the Kansas statute of limitations applicable to certain types of claims to void allegedly fraudulent transfers. In his response, the trustee concedes his attack on transfers made in January 2001 is barred by the statute of limitation. The Court will not address those claims in this order.

In their reply to the trustee's response, the defendants conceded that they were not entitled to summary judgment with respect to debtor James Wills, and that the trustee could avoid the transfer that was made in October 2005. They continue, however, to press their argument that the trustee's claims to avoid transfers made by debtor Melinda Wills fail because he has not identified an unsecured creditor she could have defrauded by making those transfers. The trustee relies on Sunflower Bank, the successor to Citizens State Bank, as the allegedly defrauded creditor.

In December 2000, Mrs. Wills (and her husband) gave Citizens State Bank a guaranty of a rental company's debts to the bank. Sometime later, Sunflower Bank merged with Citizens, succeeding to its position with respect to the debtors. When they filed for bankruptcy in October 2005, the debtors listed Sunflower Bank as a creditor they owed $787,000, and reported that debt was secured by mortgages on rental properties worth $526,000. In November 2005, Sunflower Bank filed a motion for stay relief, similarly indicating its collateral was worth less than it was owed by the rental company and the debtors.

**DISCUSSION**

The claims the trustee is pursuing in this proceeding are based on § 544(b)(1) of

3

the Bankruptcy Code, which provides in relevant part: "[T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502." The "applicable law" the trustee relies on appears in the Kansas Uniform Fraudulent Transfer Act, K.S.A. 33-201 to -212. As relevant now, the trustee relies on K.S.A. 33-204(a), which provides:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> > (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or
> > (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> > > (A) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > > (B) intended to incur, or believed or reasonably should have believed that such debtor would incur, debts beyond such debtor's ability to pay as they became due.

The court notes that the causes of action under this provision are available to both secured and unsecured creditors.[1] The claim the trustee succeeds to under § 544(b)(1), by contrast, must be one held by an unsecured creditor.

The defendants first argue Sunflower Bank does not qualify as the required

---

[1] *See* K.S.A. 33-201(c) (defining "claim" to include rights to payment that, among other things, are "secured or unsecured"); K.S.A. 33-201(d) (defining "creditor" as "a person who has a claim").

4

creditor under § 544(b)(1) because the bank "presumably was fully secured at the time" or it would not have made the loan.  The problem with this argument is it relies on the wrong time.  Even if Sunflower Bank was fully secured when Mrs. Wills executed her guaranty and was still fully secured when she made the transfers the trustee is attacking, Kansas law would authorize the bank to avoid the transfers if it could establish the necessary facts under K.S.A. 33-204(a).  It was only later, when the debtors filed for bankruptcy, that the Bankruptcy Code said the trustee could step into the shoes of an unsecured creditor (but not a secured one) and avoid transfers that creditor could avoid under a law like K.S.A. 33-204(a).  The debtors' schedules reported that Sunflower Bank was undersecured — that is, it had both a secured and an unsecured claim — and, at least for summary judgment purposes, that is enough to create a disputed issue of fact and, at this point in the proceeding, defeat the defendants' argument the bank was not an unsecured creditor when they filed their bankruptcy petition.

The defendants also point out that Sunflower Bank's claim against Mrs. Wills is based on a guaranty and so is a contingent claim, but do not seem to suggest that fact prevents the claim from being allowable under § 502.  In fact, § 502(b)(1) says a claim should be disallowed if it is not enforceable against the debtor "for a reason other than because such claim is contingent or unmatured."  Section 502(c) provides instead for the estimation and allowance of claims that are contingent or unliquidated if fixing or liquidating them would unduly delay administration of the case.  This makes clear the contingent nature of Sunflower Bank's guaranty claim does not prevent it from being

5

"allowable" under § 502.

Next, the defendants argue Sunflower Bank does not qualify as the required unsecured creditor under § 544(b)(1) because the bank did not file a timely proof of claim, so § 502(b)(9) prevents allowance of its claim. But § 544(b)(1) requires the trustee to show the existence of an unsecured creditor with a claim that is "allowable" under § 502, not one with a claim that has actually been allowed. At least one court has said in dicta that a creditor owed money on the petition date could qualify as the creditor with an "allowable" claim under § 544(b)(1) even though its claim was not actually "allowed" under § 502 because no timely proof of claim was filed.[2] Another court indicated the petition date is the relevant date under § 544(b)(1) for determining whether the requisite creditor exists, and subsequent events do not affect that determination.[3] Furthermore, in a Chapter 7 case like this one, § 502(b)(9) does not require Sunflower Bank's claim to be disallowed because no timely proof of claim was filed; instead, a late proof of claim could be filed even now, and Sunflower Bank's claim would simply have a lower priority under § 726(a) in the distribution of property of the estate.

Finally, the defendants argue Sunflower Bank's stay relief motion should not be

---

[2]*In re Crown Unlimited Machine, Inc.*, 2005 Bankr. LEXIS 3073, slip op. at *3, n. 2 (Bankr. N.D. Ind. Nov. 4, 2005) (pointing out that "allowed" is used in §§ 506(a), 1325(a)(4), (5), and (b)(1), but not in § 544(b)); *see also In re Kopp*, 374 B.R. 842, 846-48 (undisclosed claim to avoid fraudulent transfer that creditor had asserted against debtor in pending, prepetition lawsuit was not abandoned when case was closed, and creditor's unauthorized postpetition dismissal of lawsuit did not affect trustee's right to assert claim as it stood on petition date).

[3]*MC Asset Recovery, LLC, v. Southern Co.*, 2006 U.S. Dist. LEXIS 97034, slip op. at *9-*14 (N.D. Ga. Dec. 11, 2006).

6

considered to be an informal proof of claim since it was withdrawn.  However, as explained above, the Court is convinced Sunflower Bank could qualify under § 544(b)(1) as the required unsecured creditor with an allowable claim even though it has filed no proof of claim.  The trustee's rights were fixed on the day the debtors filed for bankruptcy, and were not altered by Sunflower Bank's subsequent failure to file a timely proof of claim.

**CONCLUSION**

For these reasons, the Court concludes the defendants' motion for partial summary judgment on the ground the trustee has failed to identify an unsecured creditor of Mrs. Wills as required for him to attack her transfers under § 544(b)(1) must be denied.  It is possible that the trustee may be able to produce admissible evidence at trial that will establish that Sunflower Bank had an allowable unsecured claim at the time the debtors filed for bankruptcy.